David S. Shughart #015299
Beale, Micheaels, Slack & Shughart, P.C.
7012 N. 18th Street
Phoenix, Arizona 85020
(602) 957-0516
dshughart@bmsslaw.com

Kimberly M. Hult #31764, application for admission *Pro Hac Vice* forthcoming
Lauren E. Groth #47413, application for admission *Pro Hac Vice* forthcoming
Hutchinson, Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
hult@hbcboulder.com
groth@hbcboulder.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lida DeGroote, individually, | ) Case No.: |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) (Jury Trial Requested) |
| Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona, | ) |
| | ) |
| Defendant. | ) |

Plaintiff Lida DeGroote (hereinafter "Plaintiff"), for her Complaint against Defendant Arizona Board of Regents d/b/a University of Arizona (hereinafter "U of A" or the "University"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an Arizona resident who lives in Maricopa County. During all times relevant to this Complaint, Plaintiff was a student at U of A.

2. U of A is a public university and part of the Arizona University System, which is governed by the Arizona Board of Regents. The Arizona Board of Regents and U of A receive both state and federal funding and are subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681(a), et seq. ("Title IX").

3. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 28 U.S.C. §1367.

4. Venue is proper in this Court under 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

### Summary of Claims

5. Beginning as early as December 2015 and certainly by March 2016, U of A received numerous reports from parents and students that former University football player and student Orlando Bradford ("Mr. Bradford") was engaging in serious dating violence and physically and verbally abusing female students.

6. High-ranking University officials, including coaches, senior athletic department officials, the Dean of Students, and the University of Arizona Police Department ("UAPD") were repeatedly notified that Mr. Bradford was engaging in predatory behavior toward female students and posed a substantial risk of harm to female

U of A students. Among other things, officials learned that Mr. Bradford had beaten, choked and threatened women on campus, along with other acts of dating violence.

7. In response, the University took virtually no action: It failed to open a Title IX investigation, failed to take measures to protect the affected students and potential future victims, and failed to impose any discipline on Mr. Bradford apart from limiting his access to campus dormitories. Instead, the University ultimately promoted Mr. Bradford to a starting running back position for the fall 2016 football season.

8. Meanwhile, and as a direct result of U of A's clearly unreasonable failures to take remedial measures to address his serious acts of dating violence, Mr. Bradford proceeded to abuse and physically assault at least three female U of A students over many months. The violence continued until Mr. Bradford was arrested by the Tucson Police Department and charged with numerous felonies.

9. In January 2016, Plaintiff became one of Mr. Bradford's victims when she began a romantic relationship with Mr. Bradford that quickly turned violent. Mr. Bradford physically and verbally abused Plaintiff for approximately nine months, including long after high-ranking University officials learned that Plaintiff was one of Mr. Bradford's victims. Throughout that period, the University took no action to notify Plaintiff of other reports of violence or to provide her with any assistance or accommodations to escape what had become a terrifying spiral of abuse.

10. As set forth in further detail below, the U of A had actual, repeated notice of Mr. Bradford's dating violence and physical assaults of female University students that

created a sexually hostile educational environment for women on its campus. By acting with deliberate indifference to that notice, the U of A subjected Plaintiff and other women to sexual violence and deprived them equal access to educational opportunities in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

### University of Arizona's Notice of Orlando Bradford's Violent Behavior And Substantial Risk of Harassment and Violence to Female Students

11. Upon information and belief, by 2014, the University had begun recruiting Mr. Bradford, a star player in his hometown of Shreveport, Louisiana, to join the U of A football team. He agreed to commit to the University, joining the team and becoming a student at U of A for the start of the 2015-2016 academic year.

12. Mr. Bradford first met Ms. A in January 2015 when both were visiting the U of A on sports recruiting trips.

13. When they enrolled as University students in the fall of 2015, Mr. Bradford and Ms. A were assigned to the same dormitory. Early in the fall semester, Mr. Bradford and Ms. A began a romantic relationship.

14. Upon information and belief, Mr. Bradford and Ms. A's relationship almost immediately turned violent. On several occasions in late 2015, Mr. Bradford physically assaulted Ms. A by choking her and grabbing her by the neck. Many of these physical altercations took place in Ms. A's campus dorm room.

15. Although Ms. A initially concealed Mr. Bradford's attacks, her parents and coach discovered the abuse later that fall after noticing her injuries, including cuts and bruising.

16. Ms. A's coach and parents urged her to stay away from Mr. Bradford, but, upon information and belief, they also notified a member of the U of A athletic department that Mr. Bradford was physically abusing Ms. A.

17. At her parents' and coach's urging, Ms. A briefly ended the violent dating relationship with Mr. Bradford in December 2015. In early January 2016, however, Ms. A quietly started seeing Mr. Bradford again. Mr. Bradford promptly resumed abusing and assaulting Ms. A, regularly hitting and choking her.

18. Upon information and belief, during the week of March 21, 2016, Ms. A reported the dating violence and assaults to the University's Dean of Students, as well as members of the U of A Athletic Department. Ms. A expressed a desire to terminate her relationship with Mr. Bradford but also expressed significant fear for her safety and the potential that Mr. Bradford would physically retaliate and escalate his assaults.

19. At the time, Ms. A specifically described her concern that she was assigned to student athlete study sessions in the same building as Mr. Bradford, and she sought assurances that the University would accommodate her need for protection from Mr. Bradford. Upon information and belief, the Dean of Students assured Ms. A that the University would provide her with adequate protection to prevent additional abuse by Mr. Bradford.

20.     Relying upon the University's assurances, upon information and belief, in late March 2016, Ms. A ended her relationship with Mr. Bradford.

21.     In response, on April 9, 2016, Mr. Bradford showed up at Ms. A's dorm room, pounding on her door, shouting her name and trying to get to her.  Although Ms. A screamed that he should leave, Mr. Bradford refused to do so.  Ms. A's parents, who were on the phone with her at the time, immediately called the police.

22.     The next day, the UAPD opened an investigation into Mr. Bradford.  At a meeting attended by a U of A Senior Athletic Director and other officials, Ms. A detailed Mr. Bradford's physical abuse, including the repeated choking incidents.  Ms. A also requested information on how to apply for a protective order against Mr. Bradford.

23.     Shortly after the April 10, 2016 meeting, Ms. A sought a University no-contact order against Mr. Bradford, and, upon information and belief, was granted the order.

24.     Following the meeting and during the UAPD investigation, a member of the University's football staff purportedly instructed Mr. Bradford to avoid contact with Ms. A.  In addition, upon information and belief, the University banned Mr. Bradford from the on-campus dorms.  Apart from the verbal warning and the limit on his access to the dorms, however, the University took no further action to discipline Mr. Bradford for the violent assaults or to protect other University students from his physical abuse.

25.     During its investigation, the UAPD collected extensive documentation of Mr. Bradford's physical abuse of Ms. A.  Nonetheless, the UAPD concluded that Mr.

Bradford and Ms. A had nothing more than a "tumultuous relationship" for which Ms. A was partially to blame.

26. In addition, although high ranking U of A officials, including the Dean of Students and a senior Athletic Department official, knew about Mr. Bradford's numerous assaults of Ms. A, the University did not even open a Title IX investigation or take any other measures to protect female students targeted by Mr. Bradford.

27. Instead, upon information and belief, University employees assisted Mr. Bradford, a promising young football player, with securing off-campus housing with other members of the football team and continued to allow him to participate in football games and practice sessions with the U of A football team.

### Mr. Bradford's Abuse of Plaintiff and Ms. B

28. Plaintiff and Mr. Bradford initially met through Plaintiff's work as a sports photographer for the U of A.

29. In early January 2016, unaware of his history of dating violence, Plaintiff and Mr. Bradford began dating, even though Mr. Bradford, unbeknownst to Plaintiff, was still dating (and abusing) Ms. A.

30. Consistent with his patterns of behavior, Plaintiff and Mr. Bradford's dating relationship soon turned abusive.

31. On January 14, 2016, Mr. Bradford assaulted Plaintiff after she asked why he did not want to spend time with friends. Mr. Bradford responded by pushing Plaintiff up against a wall, choking her for 15-20 seconds, and throwing her onto a bed.

32. Mr. Bradford continued to assault Plaintiff throughout the spring 2016 semester, regularly choking, hitting and kicking her and even dragging her by her hair. The physical and verbal assaults took place both on and off the University campus. Mr. Bradford also frequently threatened Plaintiff with more abuse if she tried to report him or called the police.

33. Throughout the spring 2016 semester, Plaintiff was unaware that Mr. Bradford was also engaged in a violent dating relationship with Ms. A and that Ms. A had reported Mr. Bradford's abuse to the University and UAPD.

34. Remarkably, although Plaintiff's relationship with Mr. Bradford was well known to football team members and coaches, the UAPD failed to contact her, even after she was specifically identified as a second victim by witnesses. U of A officials, including Athletic Department officials who, upon information and belief, knew of Plaintiff's dating relationship with Mr. Bradford and reports of Mr. Bradford's violent history, never checked on her safety or notified her of well-documented reports of Mr. Bradford's violence.

35. As a result, Mr. Bradford continued to physically and verbally abuse Plaintiff throughout the spring and summer of 2016.

36. For example, on April 11, 2016, just one day after Ms. A's report to UAPD, Mr. Bradford attacked Plaintiff while at her apartment, grabbing her, dragging her across the floor screaming, and choking her until Plaintiff managed to escape him.

37. Plaintiff's neighbor called the Tucson Police Department after hearing Plaintiff's screams. When the police arrived to investigate the report of possible domestic violence, Mr. Bradford initially refused to allow Plaintiff to answer the door, only allowing her to open the door after she covered her scratches and other injuries.

38. Within days, Plaintiff's mother, Jennifer DeGroote, became concerned after she made an unexpected visit and noticed the bruising and scratches on Plaintiff's face and body. When she tried to talk with Plaintiff about it, Plaintiff refused to disclose the abuse, given her fear of Mr. Bradford.

39. On May 5, 2016, Jennifer, increasingly worried about her daughter's safety, contacted the University's U of A's Assistant Dean of Students to discuss what was happening to Plaintiff.

40. On May 10, 2016, Jennifer talked with the Dean of Students and explained that she feared for Plaintiff's safety, but that Plaintiff was afraid to speak with the school. By this time, U of A had known for weeks that Plaintiff was one of Mr. Bradford's dating violence victims.

41. Meanwhile, Mr. Bradford's abuse of Plaintiff continued unabated. On May 22, 2016, more than a month after the University received reports of Mr. Bradford's dating violence, Mr. Bradford pushed Plaintiff up against a wall and choked her. When she tried to escape him, Mr. Bradford grabbed and scratched her, bruising her ribs and causing lacerations.

42. Less than two weeks later, Mr. Bradford began choking Plaintiff when she told him she wanted to leave his house, telling her she could not leave, kicking her in the back until she fell, and then continuing to choke her once she was on the floor.

43. After that episode, Mr. Bradford continued to physically, mentally and verbally abuse Plaintiff into the summer, regularly threatening Plaintiff that he would increase the abuse if she reported his attacks.

44. Mr. Bradford's teammates frequently witnessed the obvious injuries Plaintiff sustained from Mr. Bradford's abuse, including bruises and black eyes. Moreover, upon information and belief, Mr. Bradford's abuse of Plaintiff was openly discussed in the football locker room and other areas, with no effort to conceal the discussions from U of A athletic staff or coaches.

45. Nonetheless, no one from the University made any efforts to investigate or stop Mr. Bradford's obvious abuse of Plaintiff or to take other steps to assist her.

46. In late June 2016, Plaintiff briefly attempted, on her own, to end her relationship with Mr. Bradford, refusing to answer his calls and texts and avoiding him on and off campus.

47. In response, Mr. Bradford continued to harass and began stalking Plaintiff, appearing at her apartment unannounced and sending her threatening messages, warning that she had "no choice" and "I think I will kill you if you leave to be honest."

48. Deeply afraid, Plaintiff agreed to see Mr. Bradford, and he almost immediately resumed abusing her. Later that same month, Mr. Bradford assaulted

Plaintiff after she received a text from a third person, slapping her face so hard that her head hit the bathroom wall with sufficient force to cause a serious concussion.

49. Meanwhile, Mr. Bradford began another abusive dating relationship with a third U of A student, Ms. B. Upon information and belief, Mr. Bradford was so physically abusive of Ms. B during the summer of 2016 that he even bragged to friends that he had "tortured" her.

50. Upon information and belief, throughout the summer and fall of 2016, as with Plaintiff, Mr. Bradford's teammates witnessed Mr. Bradford's abuse of Ms. B and discussed it openly in the locker room and other team areas. No one from the U of A sought to stop the abuse or take other remedial measures to assist any of Mr. Bradford's victims, however.

51. Instead, for the fall 2016 football season, the University announced that Mr. Bradford would be a starting running back for the U of A football team.

### **Mr. Bradford Is Arrested and Charged with Numerous Felonies**

52. On September 12, 2016, Mr. Bradford became upset with Ms. B because he believed that she had scratched his car. Over a two-day period on September 12-13, 2016, Mr. Bradford subjected Ms. B to protracted violence by restraining her, beating and choking her, dragging her by her hair and threatening to kill her.

53. When Ms. B finally escaped, she immediately called her mother, who then called the Tucson Police Department. On September 14, 2016, the Tucson Police

- 11 -

Department began an investigation of Mr. Bradford that quickly led to Mr. Bradford's arrest on multiple felony counts.

54. When the U of A learned of Mr. Bradford's arrest, they dismissed him from the football team but falsely announced that this was Mr. Bradford's "first" act of domestic violence. At the time, University officials were well aware that Mr. Bradford had previously been reported to and investigated by the UAPD for serious claims of dating violence many months earlier.

55. After she learned of Mr. Bradford's arrest, Plaintiff decided she was finally safe to report her abuse. On September 15, 2016, she reported Mr. Bradford repeated assaults to the Tucson Police Department.

56. Based upon Plaintiff and Ms. B's reports, Mr. Bradford was charged with three counts of domestic violence kidnapping and eleven counts of aggravated assault – domestic violence.

57. On September 29, 2017, Mr. Bradford pled guilty to two counts of aggravated assault-domestic violence.

58. On November 20, 2017, Mr. Bradford was sentenced to five years in prison for his assaults of Plaintiff and Ms. B.

59. In late September 2017, Plaintiff was approached for the first time by a University Title IX Investigator, who inquired about a potential code of conduct complaint against Mr. Bradford.

60. On October 3, 2017, after Plaintiff talked with her mother, Jennifer DeGroote emailed the Title IX Investigator, Susan Wilson, requesting additional information. The Title IX Investigator offered her department's "support and assistance if needed" but did not address the DeGrootes' specific questions and requests for information.

61. On October 6, 2017 Jennifer DeGroote again sought additional information from Ms. Wilson, including information about whether Mr. Bradford was still able to attend his University classes while sentencing was pending. Ms. Wilson later followed up with Plaintiff to confirm that Mr. Bradford would not be returning to campus, but neither Plaintiff nor her mother have ever been contacted again by any University officials.

62. As a result of Mr. Bradford's prolonged physical and verbal abuse, Plaintiff has suffered from serious disruption to and negative repercussions on her education, from the ongoing physical effects of her concussion and other injuries, and from substantial emotional trauma.

### First Claim for Relief

### Violation of Title IX (20 U.S.C. § 1681(a))

### Indifference to Substantial Risk of Harm

63. Plaintiff incorporates by reference the prior paragraphs of her Complaint.

64. Beginning in late 2015 or by no later than March 2016, U of A had actual knowledge of a substantial risk of harm to female students based upon the reports of Mr. Bradford's pattern of serious physical and verbal abuse of Ms. A.

65. U of A acted with deliberate indifference to these reports when it failed to conduct a Title IX investigation into reports of Mr. Bradford's pattern of dating violence, to take remedial measures to prevent further abuse, and to offer protections to potential targets, including Plaintiff, of Mr. Bradford's violence. This failure to take any action, despite the University's authority to do so, was clearly unreasonable in light of known circumstances.

66. As a direct and proximate result of the University's failure to respond to reports of a pattern of dating violence by Mr. Bradford, one of its budding football stars, Plaintiff was subjected to many months of serious physical abuse and domestic violence.

67. Plaintiff was subjected to dating violence that were so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits, including missing classes, suffering from low grades, and delayed graduation.

68. In addition, Plaintiff has suffered and continues to suffer from the lingering physical ramifications of her injuries and considerable anxiety and emotional distress regarding her experience, safety and well-being.

69. Plaintiff has suffered these and other damages as a result of U of A's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as set forth above.

### PRAYER FOR RELIEF

On her claim for relief, Plaintiff Lida DeGroote seeks the following:

A. An award of damages to be determined at trial, including, without

limitation, reimbursement and prepayment for her expenses incurred as a consequence of the domestic violence; damages for deprivation of equal access to the educational benefits and opportunities provided by U of A, as well as future losses of income, employment and future career benefits and earning potential; damages for past, present and future physical injuries, emotional pain and suffering, ongoing and severe mental anguish; and loss of past, present and future enjoyment of life in an amount to be determined by the jury;

     B.    Statutory and mandatory interest on all sums awarded;

     C.    An award of costs and attorney fees (pursuant to 42 U.S.C. § 1988(b)); and

     D.    Any other relief as is proper.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE**

DATED this 29th day of January, 2018.

           BEALE, MICHEAELS, SLACK
           & SHUGHART, P.C.

           By /s/ David S. Shughart

               David S. Shughart
               7012 N. 18th Street
               Phoenix, Arizona 85020
               Attorneys for Plaintiff