Erin M. Carrillo #024613
The Carrillo Law Firm, PLLC
23 North Stewart Avenue
Tucson, AZ 85716
(520) 398-7369
erin@thecarrillolawfirm.com

Kimberly M. Hult #31764. Admitted Pro Hac Vice
Lauren E. Groth #47413, Admitted Pro Hac Vice
Hutchinson, Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
hult@hbcboulder.com
groth@hbcboulder.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lida DeGroote, individually,<br><br>  Plaintiff,<br><br>  vs.<br><br>Arizona Board of Regents, d/b/a University of Arizona, a governmental body of the State of Arizona,<br><br>  Defendant. | Case No.:  2:18-cv-00310-SRB<br><br>**PLAINTIFF'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS FOR DISCOVERY MISCONDUCT** |

Pursuant to Fed. R. Civ. P. 37(b) and (c) and the Court's inherent powers, Plaintiff Lida DeGroote ("Plaintiff" or "Ms. DeGroote") moves this Court for an order imposing sanctions and granting relief against Defendant Arizona Board of Regents, d/b/a University of Arizona (the "U of A") for failing to disclose material evidence, providing untruthful

discovery responses, and testifying falsely. The University's conduct has harmed the integrity of this judicial proceeding and severely prejudiced Plaintiff.

**CERTIFICATION OF COUNSEL**

Undersigned counsel has conferred with U of A's counsel, which agreed to limited additional discovery but opposes the additional sanctions sought in this Motion.

**INTRODUCTION**

The sanctity of the judicial process relies on the parties' fair and truthful participation, compliance with their "obligations and responsibilities" and agreement to "tell the truth" in discovery. *See Dotson v. Bravo*, 202 F.R.D. 559, 570–71 (N.D. Ill. 2001). On May 29, 2019, Plaintiff discovered that for over a year, the U of A failed to disclose relevant, requested documents (while repeatedly representing to Plaintiff and this Court that those documents had been produced), submitted false interrogatory answers, and allowed key witnesses to give untruthful deposition testimony. This misconduct severely undermined Plaintiff's diligent discovery efforts. As the Ninth Circuit has stated, "[t]here is no point to a lawsuit if it merely applies law to lies." *Valley Eng'rs Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1058 (9th Cir. 1998).

One of Plaintiff's Title IX claims alleges that the U of A had actual notice that former University football player and student Orlando Bradford ("Mr. Bradford") engaged in serious dating violence toward U of A female students. Plaintiff specifically alleges that U of A officials knew by March 2016 that Mr. Bradford had physically abused both "Student A"[1] and Plaintiff. Plaintiff further alleges that, despite this knowledge of the abuse, the University failed to take any action to protect her or other potential victims, and, as a result, Mr. Bradford continued to physically, emotionally, and verbally abuse Plaintiff – hitting, choking and threatening her, causing her to fear for her life – until just before his arrest in September 2016.

---

[1] Given her nonparty privacy interests, Plaintiff will refer to her only as "Student A" and will redact her name (and that of other students) in documents attached to this Motion.

In discovery, Plaintiff focused on the U of A's knowledge of Mr. Bradford's abuse. Formal discovery began in May 2018, and until May 29, 2019, the U of A and its representatives maintained in its discovery responses, in pleadings filed with the Court, *see, e.g.*, [**Doc. 17**, **¶ 4**], and in sworn deposition testimony that it had limited notice of Mr. Bradford's abuse of Student A and ***no*** notice of the threat to Plaintiff or other female students.

Late last month, the U of A produced, for the first time, a page of notes, dated March 23, 2016, by Erika Barnes, the U of A's Senior Associate Athletic Director ("Senior Associate AD"), Senior Woman Administrator ("SWA"), and Title IX liaison for its Athletic Department. *See* Exhs. 2 and 3. Ms. Barnes' notes document detailed reports of Mr. Bradford's abuse of Student A, including that Mr. Bradford had admitted to hitting Student A, blackmailed Student A using sexually explicit videos, created fake Twitter accounts, and threatened to "F' her up/hit her". *See* Exh. 2. It also documents his abuse of Plaintiff, whom he was then dating, describing it as a "volatile relationship," and noting that he "hits her often," "freaked out on her dog in front of people," and had sent a sexually explicit video of her to others. In addition, the notes further document Mr. Bradford's "violent past," that he was "not afraid to hurt someone," and that people "need to be careful[.]" *See id*.

Then, on June 14, 2019, the U of A also disclosed, again for the first time, documents showing that on March 24, 2016, Ms. Barnes emailed these same notes to the U of A's Dean of Students, Kendal Washington White ("Dean Washington White"), and Senior Title IX Investigator Susan Wilson ("Ms. Wilson"). *See* Exh. 3. In addition to contradicting prior disclosures, discovery responses, and sworn deposition testimony, these documents confirm that by March 24, 2016, three top U of A officials knew of Mr. Bradford's serious abuse of both Student A and Plaintiff.

This late disclosure – obtained only after Plaintiff made persistent and repeated requests that the U of A verify that all documents had truly been produced – occurred approximately five weeks before the discovery deadline and well after the completion of key depositions, preparation of expert reports, and the deadline for serving other written

3

discovery. It demonstrates the U of A has (1) failed to disclose relevant information; (2) given untruthful responses to Plaintiff's discovery requests; (3) provided false testimony on material facts under oath and in deposition; and (4) is far more culpable in this case than it previously represented. Accordingly, Plaintiff respectfully submits that significant sanctions are warranted under Ninth Circuit law.

## FACTUAL BACKGROUND

### I. Plaintiff's Claims and the U of A's discovery abuses.

Plaintiff was a U of A student from 2011-2017. Exh. 5 at 71:10-11. In late 2015, she began dating Mr. Bradford, who was later named as starting running-back for U of A's football team. *Id*. at 261:17-262:7; [**Doc. 11, ¶ 7**]. In January 2016, Mr. Bradford began to abuse Plaintiff, beating her, kicking her, dragging her by her hair, throwing her across rooms and into walls, choking her, and threatening to kill her. *See id.* at 22:18-22, 23:14-25:13, Depo. Exh. 3.[2] Mr. Bradford also blackmailed her, warning that he would disseminate sexually-explicit videos of her if she reported his abuse. *Id*. at 217:12-18. The abuse continued until September 2016, shortly before he was arrested for kidnapping and assaulting another U of A student, MacKenzie Brown. *See id.* at 55:21-25, 57:9-11.[3]

On January 30, 2018, Plaintiff filed her Complaint. [**Doc. 7**]. In response, the U of A denied, among other things, any notice of Mr. Bradford's abuse of Plaintiff prior to his arrest in September 2016. [**Doc. 17, ¶ 4**]. For over a year, it continued to deny that notice.

### A. The Failure to Disclose Relevant, Requested Documents.

On April 9, 2018, Plaintiff and the U of A exchanged mandatory initial discovery responses. *See* Exh. 6. The U of A's Title IX files for Plaintiff, Ms. Brown, and Student A were not, however, listed or produced, and key witnesses like Dean Washington White were

---

[2] Graphic photographs showing Plaintiff's injuries have been omitted from the Deposition Exhibit 3, which is part of Exhibit 5.

[3] Ms. Brown has filed her own Title IX Complaint, *Brown v. Arizona Board of Regents, d/b/a University of Arizona*, No. 2:17-cv-03536-GMS, using her real name.

4

not identified. *See id.* On May 23, 2018, Plaintiff served her first discovery requests on the U of A, seeking all documents relating to any assaults and/or reports of abuse by Plaintiff and/or Student A, including specifically any "any reports by [Student A's teammate] . . . ." *See* Exh. 7 at RFP 3, 4. Plaintiff defined "documents" broadly, consistent with the scope of Fed. R. Civ. P. 34(a)(1)(A). *See id.* at 3.

In June 2018, the U of A produced some Title IX electronic files maintained in its "Advocate" database. *See* Exh. 8. The University did not, however, disclose the existence of any physical Title IX files maintained in the Dean of Students' Office, including Ms. Wilson's "working files." While the University also produced a small number of emails regarding Mr. Bradford, Student A, Plaintiff, and Ms. Brown, those emails did not include any emails to or from its Athletic Department.

Concerned that relevant, requested documents might not have been produced, Plaintiff contacted the U of A, and, in October 2018, was assured that the emails produced "would obviously include, if they existed, emails indicating knowledge of misconduct by Bradford." *See* Exh. 9. In January 2019, when Plaintiff's counsel noted ongoing concern "about the lack of email communication produced in this case[,]" *see* Exh. 10, the U of A advised that it had searched all relevant communications and documents on "any device" and "to the extent they were located, we produced them." *Id.* It also maintained in hearings before this Court that all documents had been produced.[4]

In reliance on the U of A's repeated representations and given its stated defenses, Plaintiff began to depose key current and former U of A employees, including (1) Ms. Barnes, the Senior Associate AD/SWA/Title IX liaison, who met with Student A and her

---

[4] For example, during the January 15, 2019 hearing, the U of A represented that it "has provided all of the information it has. It has provided the names of everyone that it knows of that has any knowledge of any of these incidents . . . We have provided every piece of documentation that we can find that has anything to do with it." Exh. 4 at 15:16-21; *see also id.* at 15:9-11.

5

teammates in March 2016, *see* Exh. 11 at 90:25-92:25; 99:3-18; 112:25-113:23; and (2) Ms. Wilson, the Senior Title IX investigator who also met with Student A in March 2016, *see* Exh. 12 at 107:9-109:9.[5]  Significantly, at her deposition, Ms. Wilson revealed that there were additional relevant and responsive documents that the U of A had not produced.  In particular, Ms. Wilson testified that there were physical Title IX files in the Dean of Students' office for "every referral, report, concern that [she] received."  *See* Exh. 12 at 84:7-84:24.  Plaintiff promptly requested production of those files, which fell within the scope of her prior discovery requests and the U of A's mandatory initial disclosure obligations.  *See* Exh. 13.

On May 29, 2019, the U of A finally produced the physical Title IX files and Ms. Wilson's "working files" for the relevant Title IX investigations.  Ms. Wilson's "working file" for Student A included Ms. Barnes' notes from March 23, 2016.  *See* Exh. 2.  Two weeks later, on June 14, 2019, the University produced, without explanation, Ms. Barnes' emails forwarding the notes to Dean Washington White and Ms. Wilson.  *See* Exh. 3.

## B.     The Failure to Provide Truthful Interrogatory Answers.

U of A's late disclosure of Exhibits 2 and 3 reveal that the U of A provided false or misleading interrogatory answers on the notice issue.  In her first set of interrogatories, Plaintiff requested that the U of A identify all individuals with knowledge of facts related to her abuse.  *See* Exh. 7 (Interr. No. 2).  In its answer, the University of Arizona stated that "***no employees, officials or personnel at the U of A had any knowledge of Plaintiff's allegations of assault prior to September 2016***."  *See* Exh. 14 at 6 (emphasis added).  As Exhibits 2 and 3 establish, this answer was, at best, misleading, if not outright false.

Similarly, Plaintiff also requested that the U of A identify all individuals with knowledge of facts related to Student A's abuse.  *See* Exh. 7 (Interr. No. 1).  Once again, in its answer, the University did not disclose that Ms. Barnes sent reports of Student A's abuse

---

[5] Ms. Wilson was originally scheduled to be deposed in November 2018.  Due to discovery disputes, the Court's orders for the production of other records, and medical issues, Ms. Wilson's deposition was rescheduled several times before it was taken on April 17, 2019.

to Dean Washington White or Ms. Wilson in March 2016. Exh. 14 at 3. Instead, the U of A falsely stated that Ms. Washington White had no knowledge of Student A's allegations until the summer of 2016. *Id.* at 5. The U of A also failed to disclose that Ms. Barnes had spoken with its Title IX Coordinator, Mary Beth Tucker, and Athletic Director, Greg Byrne, regarding Student A's and her teammates' reports. *See* Exh. 11 at 159:25-160:22; 185:6-19; *see also* Exh. 14 at 15-17 (failing to disclose Ms. Barnes' reports of Mr. Bradford's abuse of Student A, and especially, abuse of Plaintiff, in response to Interrogatory No. 9).

### C. The Failure to Provide Truthful Testimony.

Perhaps most troubling has been the revelation that key University employees repeatedly gave false testimony at their depositions. Given the extent of this untruthful testimony, it strongly appears to constitute perjury.[6]

#### 1. Ms. Barnes, Senior AD/SWA/Title IX Liaison

On February 26, 2019, Ms. Barnes was deposed and questioned about her March 2016 meeting. In response to several questions, she repeatedly and falsely denied that she had taken any notes. For example, Ms. Barnes replied as follows to a direct question:

> Q: During the first meeting with [Student A's teammate], did you take any notes of that meeting?
>
> A. ***I did not***. Listened.

Exh. 11 at 99:24-100:1 (emphasis added). When pressed on this issue, Ms. Barnes even fabricated detailed explanations as to why she did not document the meeting.

> Q: And you stated earlier that you don't normally take notes of these kind of discipline-these kinds of reports?
>
> A: I don't like keeping the information-having parallel documents. I want to give that information to the appropriate office for their records.

---

[6] Plaintiff has highlighted some of the testimony here. Plaintiff has attached, as Exhibits 15 and 16 to this Motion, a summary of these and other, similar excerpts for the Court's review.

7

*Id.* at 100:2-7; *see also id.* at 131:14-132:6, 132:21-133:23.  On April 18, 2019, Ms. Barnes testified as a 30(b)(6) witness and was questioned about athletic department records on Title IX and Dean of Students matters.  Again, she denied that documents, such as Exhibit 2, even existed.  Exh. 11 at 11:6-12, 14:9-17 (30(b)(6) testimony).

Ms. Barnes also did not testify fully or truthfully about the reports by Student A's teammates, failing to disclose the documented fighting between Student A and Mr. Bradford, Mr. Bradford's admission that he had hit Student A, that Mr. Bradford was blackmailing Student A, that Mr. Bradford had threatened Student A, or that others reported that he had a "violent past" and "was not afraid to hurt someone."  *See* Exh. 2.  Instead, Ms. Barnes testified that she did not learn about the fights until later, *see* Exh. 11 at 180:2-21, did not believe that Student A was in danger of immediate harm, *see id.* at 103:4-15, and denied that Student A's teammate reported any injuries (scratches) on Student A's neck, *id.* at 129:11-14.

Significantly for this case, Ms. Barnes also testified falsely about her knowledge of Mr. Bradford's relationship with and abuse of Plaintiff.  She instead specifically denied that Student A's teammates reported that Mr. Bradford had physically abused Plaintiff:

> Q: So [Student A's teammate] mentioned to Detective Dorer that she was aware of another girl that Orlando was dating, that they would get in physical fights, and he would hit her, too, and they would fight like Orlando and Student A did. Do you recall [the teammate] reporting that to you?
>
> Ms. Elliott: Form.
>
> The Witness: No.

*Id.* at 125:24-126:5. She further claimed that she "didn't know" Plaintiff and Mr. Bradford's relationship status, *see id*. at 165:11-12, and expressly denied that the students reported either that Mr. Bradford fought with or hit Plaintiff.  *See id*. at 125:24-126:5.

**2.     Susan Wilson, Senior Title IX Administrator**

In her deposition, Ms. Wilson also denied knowing information contained in the

8

documented reports she received from Ms. Barnes on March 24, 2016. For example, she was questioned on why U of A did not conduct a Title IX investigation of Mr. Bradford:

> Q: Okay. And what factors did you consider in deciding whether to investigate the incident over—despite the fact that Student A was not interested in participating?
>
> A: I considered her representation that they were not in a relationship; deferred to her wishes; that she did not feel at risk.
>
> Q: Anything else?
>
> A: At that point in time, ***I wasn't aware of any reports involving Orlando Bradford***.
>
> Q: Okay. Anything else?
>
> A: Not that I can recall right now.
>
> Q: ***Did you consider whether there was a risk to any other members of the university community?***
>
> A: ***I didn't have any information to indicate that there was.***
>
> Q: ***Were you concerned that there might be a risk to the person named Lida that Orlando was reportedly staying with?***
>
> A: ***I didn't have any information to indicate there was.***

Exh. 12 at 115:5-25 (emphasis added). She likewise testified that she did not know of instances of physical abuse by Mr. Bradford or that he a presented a risk to the campus.

> Q: So in the situation where you have an allegation that a student has physically abused another student, if the victim does not want to proceed, what was, at the time, your procedure for protecting the remainder of the university from the person who's alleged to be physically abusive?
>
> Ms. Elliott: Form.
>
> The Witness: ***Well, in this case, there aren't specific instances of physical abuse. It's generalized that was alleged. And there was no indication that there was a potential risk to the campus community.*** And there are other concerns in terms of deferring to how the student wants to move forward, particularly in these instances.

*Id.* at 139:7-20 (emphasis added).

9

1   Ms. Wilson, an attorney herself, *see id.* at 11:8-12:24, further denied that she knew
2   anything about Mr. Bradford's abuse of Plaintiff, claiming that she only learned of it in
3   September 2016. *See id.* at 232:18-233:6. For example, she testified as follows:

> A: It may have come up exactly in that context with Erika. And I knew at that point in time that Chrissy Lieberman was actively meeting and working with Lida DeGroote, so I mentioned to her that a student by the name of Lida was referenced by another student.
>
> Q: You did mention that to her?
>
> A: Yes, I did.
>
> Q: When did you mention that to her?
>
> A: It would have been shortly after my meeting with Student A.
>
> Q: And what exactly did you mention to her?
>
> A: I said that—and this is generally what I recall—that the name Lida came up in conjunction with another student meeting where the student reported one incident of the potential respondent putting—I don't know if I told her specifically putting his hands on her neck. ***There was no indication that there was any potential problematic behavior in regards to Lida, that they were—even that they were in a relationship***. I didn't know if it was Lida DeGroote, but since she was meeting with her, just to be aware in the event that Lida expressed any concerns.

*Id.* at 174:1-22 (emphasis added); *see also id.* at 176:8-25 (denying knowledge of Plaintiff's abuse; 190:13-191:9 (essentially denying knowledge of Student A's abuse).[7]

---

[7] Exhibit 2 raises questions about the truthfulness of testimony by other U of A employees, who also received reports from the same students who informed the Exhibit 2 notes. *See, e.g.*, Student A's Coach Michael Candrea's testimony, Exh. 19 at 129:6-22 (students reported only black eye), 136:12-25 (denying there were reports regarding Plaintiff).

10

# ARGUMENT

## I. The U of A Has Engaged in Bad Faith and Sanctionable Discovery Misconduct.

The Court has the power to levy sanctions for litigation misconduct that amounts to bad faith. *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006); *Surowiec v. Capital Title Agency,* 790 F. Supp.2d 997, 1010 (D. Ariz. 2011). This power "is not limited by overlapping statutes or rules and can be invoked even if procedural rules exist which sanction the same conduct." *Sell v. Country Life Ins. Co.,* 189 F. Supp.3d 925, 929 (D. Ariz. 2016) (internal citation omitted); *see also* Fed. R. Civ. P. 37.

Bad faith does not require ill will; "substantial and prejudicial obduracy may constitute bad faith." *Arnold v. Country of El Dorado,* 2012 WL 3276979, at *3 (E.D. Cal. 2012). Likewise, "reckless misstatements of law and fact, when coupled with an improper purpose" can establish bad faith. *B.K.B. v Maui Police Dept.,* 276 F.3d 1091, 1108 (9th Cir. 2002). It is "permissible to infer bad faith from a party's actions plus the surrounding circumstances." *Haeger v. Goodyear Tire & Rubber Co.,* 906 F. Supp. 2d 938, 974 (D. Ariz. 2012). Here, the U of A has engaged in at least three forms of bad faith conduct.

### A. Failing to Disclose Court-Ordered Information and Falsely Answering Interrogatories.

The U of A engaged in two forms of bad faith conduct that violate this Court's General Order 17-08. First, it repeatedly failed to produce relevant documents – including Exhibits 2 and 3. Second, it gave false answers to interrogatories on its knowledge of Ms. DeGroote and Student A and failed to disclose required information. *See supra* at 5-7.

Complete, accurate "responses to discovery are required for the proper functioning of our system of justice . . . [p]roviding false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions." *Skinner v. Ryan,* 2014 WL 3064897, at *4 (D. Ariz. July 7, 2014) (internal

citation omitted); *see also Hester v. Vision Airlines, Inc.,* 687 F.3d 1162, 1169 (9th Cir. 2012) (granting default after defendant "intentionally delayed production of documents").

> These failures also fundamentally conflict with the spirit of the MIDP:
> *The MIDP is premised on the idea that the goals of Rule 1 are promoted through the early sharing of information that normally would be provided only through costly party-initiated discovery. Parties will be able to better evaluate the strengths and weaknesses of their positions. Early case assessment, perhaps with the assistance of a neutral mediator, may lead to early resolution of matters before incurring additional legal fees.*

District of Arizona, Mandatory Initial Discovery Users' Manual for the District of Arizona P.3, Comment 1.[8]

These failures substantially prejudiced Plaintiff in this lawsuit. She relied on the truthfulness of the U of A's disclosures and representations regarding document production in formulating her discovery plan, preparing other written discovery, selecting which witnesses to depose, and identifying information for experts. And throughout the year, the U of A continued to insist, falsely, that it had no notice that Mr. Bradford presented a substantial risk of harm to Plaintiff or others prior to September 2016.

### B. Giving False Deposition Testimony.

At least two U of A employees gave substantial, false deposition testimony regarding facts material to this case. Falsifying deposition testimony is an "attempt[] to deceive the district court on material matters before it," *Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488 (9th Cir. 1991), and "constitutes a fraud on the court," *Da-Silva v. Smith's Food & Drug Centers, Inc.,* 2013 WL 2558302, at *2 (D. Nev. Jun 8, 2013).

While perjury should not be confused with mere inconsistencies, Ninth Circuit courts have often found witnesses to have committed perjury when failing to disclose material information or facts. *See, e.g., Chamberlain v. Les Schwab Tire Center of California,* 2012 WL 6020103 (E.D. Cal. Dec. 3, 2012) (plaintiff committed perjury when he lied about

---

[8] Available at: http://www.azd.uscourts.gov/sites/default/files/documents/Arizona%20MIDP%20Users%20Manual.pdf

recording conversation); *Arnold,* 2012 WL 3276979, at *4 (finding plaintiff committed perjury when lying about taking a video, noting her continuous, evolving false statements). False testimony may also be inferred when, as here, the circumstantial evidence also suggests a knowing misrepresentation. *Sell,* 189 F. Supp.3d at 940 (finding a deponent's selective memory lacked credibility).[9]

In sum, the nature and extent of Ms. Barnes' and Ms. Wilson's false testimony establishes that it should be viewed as bad faith conduct and likely perjury, particularly since it occurred repeatedly with more than one employee and pertained to material facts.

## II. The U of A Should be Sanctioned for Its Discovery Abuses.

Fed. R. Civ. P. 37 outlines the sanctions available for various discovery abuses. When a party has committed perjury or a fraud on the court, sanctions may be severe, given the egregious affront to the pursuit of justice. *Vogel v. Tulaphorn, Inc.*, 2013 WL 12166212, at *5 (C.D. Cal. Nov. 5, 2013); *Newman v. Brandon,* 2012 WL 4933478, at *4 (E.D. Cal. 2012) ("[P]erjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process."); *see also United States v. Mandujano,* 425 U.S. 564, 576–77 (1976) (the Supreme Court has "without exception allowed sanctions for false statements or perjury."); *Alexander v. Caraustar Indus., Inc.,* 930 F. Supp. 2d 947, 957 (N.D. Ill. 2013) ("[P]erjury strikes at the heart of the integrity of the judicial system.").

### A. Monetary Sanctions.

The University's tactics have cost Plaintiff substantial time and expense with unnecessary discovery, meet and confer efforts, discovery hearings, and follow up discovery

---

[9] The U of A's employees' false testimony is imputed to the U of A as they were agents acting on its behalf, not disinterested third parties. Indeed, Title IX liability arises from their knowledge and actions (or inaction). As a result, U of A may be sanctioned for this misconduct to "ensure that fairness is done at trial." *See Pettit v. Smith,* 45 F. Supp. 3d 1099, 1110 (D. Ariz. 2014); *Ramos v. Swatzell,* 2017 WL 2857523, at *6 (C.D. Cal. 2017).

after depositions. Addressing the University's false statements will, if the Court grants the contemporaneously-filed motion to extend discovery, add new but necessary discovery expenses. The prejudice to Plaintiff is significant, and the prior false statements now cast doubt on the veracity of all of the U of A's submissions throughout this case. *Da-Silva,* 2013 WL 2558302, at *3 (internal citation omitted). When a party disobeys a discovery order and prejudices a party, it should pay the reasonable expenses, including attorney's fees, caused by the failure, unless it was substantially justified. *Leon,* 464 F.3d at 961; Fed. R. Civ. P. 37(b)(2)(C); *see also* General Order 17-08 (Rule 37(b)(2) applies to mandatory discovery responses required by ¶ 11).

The Supreme Court and the Ninth Circuit have also held that attorney's fees and related expenses may be awarded for bad-faith conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 33 (1991); *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178 (2017); *Miller v. City of Los Angeles,* 661 F.3d 1024, 1029 (9th Cir. 2011). Monetary sanctions must be compensatory rather than punitive in nature, *Goodyear,* 137 S. Ct. at 1186, but in exceptional cases, a trial court may "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* at 1187.

Plaintiff accordingly requests her discovery fees and costs dating from Ms. Barnes' deposition, with the further opportunity to brief those expenses for the Court.[10]

### B.    Evidentiary Sanctions

#### 1.    Remedial sanctions to address the late disclosure.

When conferring on this motion, the U of A agreed that additional discovery was warranted to mitigate any prejudice. Counsel for the parties did not agree, however, on other methods to remedy the late disclosure. The U of A's misconduct draws into particular question the integrity of the charts summarizing the U of A's other Title IX and Office of

---

[10] Alternatively, Plaintiff requests that this Court award fees and costs incurred for this sanctions motion, as well as for the additional discovery that must now be conducted. *See e.g., Ober v. City of Los Angeles,* 2014 WL 2504504, at *7 (C.D. Cal. Mar. 27, 2014).

14

Institutional Equity investigations of student athletes, which were ordered produced by the Court at the August 13, 2018 telephonic discovery dispute hearing. *See* [**Doc. 40**].

Plaintiff has long raised concerns about this chart. *See* Exh. 17 at 2:21-6:24, 7:10-17; 16:19-17:5. Given the revelation of significant discovery misconduct, Plaintiff renews her request for the underlying investigatory records.[11] First, Plaintiff has requested – but has not obtained – confirmation that in preparing the summary charts, the University reviewed both the physical Title IX files and Ms. Wilson's working files. Second, the police investigation records relate to only two of the incidents shown on the chart so they are insufficient to verify the summaries. Third, while the U of A has represented that there are no documents addressing a global response to the 16 incidents summarized, given its earlier misconduct, Plaintiff cannot rely upon this representation. Fourth, in view of Ms. Barnes' prior false testimony, Plaintiff should not be required to rely upon Ms. Barnes' testimony, as the 30(b)(6) designee for the broader response undertaken by the U of A's athletic department on these issues. *See* Exh. 18.

The Court has previously noted that if "the point comes where I order the University to produce things that are otherwise protected by federal law, I have to be absolutely certain about that production." Exh. 17 at 23:4-7. Plaintiff respectfully submits that this case has now reached the point where such production is warranted.

### 2. Evidentiary sanctions for false disclosures and perjury.

Pursuant to Rule 37(b)(2)(A)(i) and given the seriousness of the misconduct, Plaintiff also requests an Order precluding the University from asserting a defense that it had no actual knowledge of the substantial risk of harm posed by Mr. Bradford to Plaintiff, including evidence in support of this defense. This sanction is tied to the misconduct at issue and is

---

[11] Plaintiff recognizes that the names of third-party students would be redacted from those records, consistent with prior practice in this case, which would protect the privacy interests of those students. *See U.S. v. Miami Univ.,* 294 F.3d 797, 824 (6th Cir. 2002) (noting that "[n]othing in the FERPA would prevent the Universities from releasing properly redacted records.").

1  justified under Rule 37(b)(2)(B) and this Court's inherent powers given the University's
2  violation of General Order 17-08. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg.*
3  *Corp.,* 982 F.2d 363, 368 (9th Cir. 1992).
4        In addition, Plaintiff requests that this Court grant an adverse inference instruction
5  and instruct the jury that the U of A willfully offered false testimony and false information
6  in discovery and that the jury may consider and draw adverse inferences from these facts.
7  *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d 165, 171-72 (S.D.N.Y. 2006).

## **CONCLUSION**

9        For the reasons outlined above, Plaintiff respectfully requests that this Motion be
10 granted.

DATED this 27th day of June, 2019.

          HUTCHINSON, BLACK AND COOK, LLC


          By /s/ *Lauren E. Groth*
              Kimberly M. Hult
              Lauren E. Groth
              921 Walnut Street, Suite 200
              Boulder, CO 80302

          THE CARRILLO LAW FIRM, PLLC

          By /s/ *Erin M. Carrillo*
              Erin M. Carrillo
              23 North Stewart Avenue
              Tucson, AZ 85716

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2019, I served Plaintiff's Motion for Evidentiary and Monetary Sanctions on the following individuals via electronic mailing:

Claudia Acosta Collings, Esq.
Stephanie Elliot, Esq.
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ 85004

By   */s/ Erin M. Carrillo*

Erin M. Carrillo
23 North Stewart Avenue
Tucson, AZ 85716

HUTCHINSON, BLACK AND COOK, LLC

By */s/ Kimberly M. Hult*
Kimberly M. Hult

Lauren E. Groth
921 Walnut Street, Suite 200
Boulder, CO 80302
*Attorneys for Plaintiff*